# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| ParkNorth Group, LLC, ) | Case No.: 05-00035-BGC-7 |
| ) | |
| Debtor. ) | |
| | |
| Nettles Hart Hess & Hughes, P.C. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | A. P. No.: 05-00005 |
| ) | |
| ParkNorth Group, LLC, ) | |
| ) | |
| Defendant. ) | |

# PARKNORTH 2

## ORDER REMANDING CASE TO STATE COURT

### I. Background

There are two related adversary proceedings before the Court. The first is <u>ParkNorth Group, LLC v. Nettles, Hart, Hess & Hughes, P.C.</u>, AP No. 05-00004, which this Court will refer to as ParkNorth 1. ParkNorth 1 involves a complaint for sanctions filed directly in this Court. The second is <u>Nettles Hart Hess & Hughes, P.C. v. ParkNorth Group, LLC</u>, AP No. 05-00005, which this Court will refer to as ParkNorth 2. ParkNorth 2 involves a state court lawsuit removed by the debtor from the Circuit Court of Jefferson County, Alabama, to this Court.

The matters before the Court in the instant proceeding (ParkNorth 2) are a <u>Notice of Removal</u> filed on January 6, 2005, and amended on January 10, 2005; an <u>Emergency Motion for Remand and/or For Abstention</u> filed on January 17, 2005; and a <u>Response to Emergency Motion for Remand and/or for Abstention</u> filed by the Defendant on January 24, 2005. After notice, a hearing was held on February 2, 2005. Appearing were Lee Benton for the Plaintiff-Debtor ParkNorth Group, LLC; Scott Williams for the defendant Nettles Hart Hess & Hughes, P.C. (Nettles Hart); and Dennis Schilling for the Trustee. The matters were continued to March 9, 2005.

The March 9, 2005, hearing was held. Appearing were Mr. Benton; Mr. Williams; James Henderson, the Trustee; Thomas Corbett and Jon Dudeck for the Bankruptcy

Administrator; and Robert Rubin and Derek Meek for Mark White (who represents Nettles Hart in the state court action). By consent of the parties, the matters were submitted on the pleadings.

## II. Findings of Fact

### A. The Parties and Their Relationships

The plaintiff Nettles Hart, (the defendant in ParkNorth 1), is a professional corporation whose members are attorneys who were once members of the debtor's predecessor London & Yancey, LLC. The debtor changed its name to "ParkNorth Group, LLC" on December 30, 2004.

ParkNorth Group, LLC., the debtor-defendant, (the plaintiff in ParkNorth 1), is a limited liability company. Mr. Thomas Elliott, a defendant in a state court action between the parties, is, according to the debtor's bankruptcy petition, the managing member of the debtor.

The parties' relationship is unusual. According to the Nettles Hart state court complaint removed to this Court as ParkNorth 2, Nettles Hart's members worked at London & Yancey, but they operated almost autonomously from the other members of the firm. They were referred to as the "Nettles group." The remaining members of the firm worked under the designation "Elliot group."

With two exceptions, London & Yancey was two law firms in one. Each group had a separate staff and associates. Each was entirely responsible for its own distinct expenses, salaries, benefits, and insurance plans. Each had its own distinct compensation plan. Each had its own clients for which it provided services and billed. And each operated independently of the another.

The two exceptions were that the groups shared common overhead expenses based on a proration of actual cash receipts, and the Nettles group paid five per cent of its actual cash receipts to an entity owned by London & Yancey's majority stockholder, which owned certain assets used by London & Yancey.

Nettles Hart's members were separated from London & Yancey on October 21, 2003.

### B. The State Court Litigation

On October 30, 2003, Nettles Hart sued London & Yancey and Mr. Elliott in the Circuit Court of Jefferson County, Alabama. The case was assigned Case No. CV 2003-006897. The essential purpose of the lawsuit was to force London & Yancey to turn over to Nettles Hart any fees it had collected, or might collect, from Nettles group's clients.

On London & Yancey's motion, and with the consent of Nettles Hart, the issues regarding the fees collected by London & Yancey from Nettles Hart's clients were ultimately submitted to arbitration.

The arbitrator issued his decision on December 20, 2004. He concluded that London & Yancey had collected $601,929.50 in fees from Nettles Hart's clients for work done by the former Nettles group members. But he determined that the former Nettles Group members owed substantial expenses to London & Yancey, which would be offset against the fees collected from the Nettles group's clients. The balance was $148,151.63.

In his order, the arbitrator directed London & Yancey to turn over the remaining $148,151.63 in collected fees, "from that London and Yancey Special Account held in the nature of escrow to the individual plaintiffs as their interest may appear in The Nettles Group Agreement or as otherwise directed by the plaintiffs individually." <u>Arbitration Award</u> entered December 20, 2004, at 6.

The arbitrator then dismissed all other claims of any sort by either party against the other, other than those specifically described and disposed of in the arbitration award.

On December 30, 2004, Nettles Hart filed a motion in the state court litigation styled <u>Motion to Enforce Arbitration Award, for Sanctions, and for Injunctive Relief</u>. That motion alleged that London & Yancey and Mr. Elliott had failed to, or refused to, turn over the fees which, according to the arbitrator, belonged to Nettles Hart. The motion sought injunctive relief in the form of an order directing London & Yancey and Mr. Elliott to turn over the fees, plus attorneys fees and costs involved in obtaining enforcement of the arbitration award. <u>Id</u>. filed December 30, 2004.

On January 3, 2005, the state court entered an order on Nettles Hart's motion to enforce the arbitration award. In that order, the court found that there existed "a serious concern," and "real and present danger," that London & Yancey and Mr. Elliott were, in essence, not inclined to turn over the fees belonging to the defendant, as ordered by the arbitrator, and were inclined to "divert" those fees. <u>Order</u> entered January 3, 2005. Based on that conclusion, the court directed London & Yancey and Mr. Elliott to turn over the fees to the state circuit court clerk and to desist from diverting or paying those funds to anyone other than the state circuit court clerk. The court required the turnover by 5:00 p.m. on the date the order was issued.

ParkNorth Group, LLC., filed the present Chapter 7 case on January 3, 2005, the same day that the state court entered its order directing London & Yancey and Mr.

3

Elliott to turn over the fees to the state circuit court clerk. The petition was filed at 3:51 p.m.[1]

On January 4, 2005, Nettles Hart filed a pleading styled <u>Motion for Order to Show Cause</u> in the state court case. In that pleading, which is the focus of the debtor's complaint before this Court in ParkNorth 1, Nettles Hart alleged that during the course of the state court litigation, Mr. Elliott represented to the state court and the arbitrator that a special bank account had been established to preserve the fees belonging to the defendants. Nettles Hart provided documents to the state court and the arbitrator that reflected that such an account did exist.

Based on that information, Nettles Hart requested the state court to hold an evidentiary hearing to determine whether the special bank account existed. In its motion it also requested the state court to order Mr. Elliott, "to refrain from either destroying or modifying any documents, records, e-mails, recordings or information of any type relating to the finances of London & Yancey, L.L.C.; ParkNorth Group, L.L.C.; Thomas R. Elliott, individually; TRE, L.L.C.; or any other entity or individual with information related to London & Yancey, L.L.C.." <u>Motion for Order to Show Cause</u> filed January 4, 2005, at 5. And, finally, Nettles Hart requested the state court to order:

> Thomas R. Elliott, his agents, representatives and counsel, to show cause ... why Thomas R. Elliott or others acting on his behalf, are not in contempt of this Court's previous orders concerning keeping and safeguarding property that has been determined to be property of the Plaintiffs and whether, as officers of the Court, Thomas R. Elliott, or others acting in his direction and behalf have made misrepresentations to this Court or failed to exhibit candor to this Court in breach of legal and/or ethical duties.

<u>Id</u>.

On January 6, 2005, the ParkNorth removed the state court action to this Court. Nettles Hart filed the pending motion to remand the case to the state court on January 17, 2005.

On February 18, 2005, Nettles Hart filed a document entitled <u>Stipulation and Consent</u> in which it stipulated that the amount in issue between it and the debtor is $148,151.63, the balance the arbitrator recognized as belonging to Nettles Hart.

---

[1] The debtor's complaint in this Court does not state what time the state court order was entered. The debtor merely contends that the state court judge was provided notice of the bankruptcy filing at 3:55 p.m., that the judge entered his order prior to receiving notice of the bankruptcy filing, and that the judge's order may "possibly" have been executed subsequent to the moment the bankruptcy petition was filed.

4

Case 05-00005-BGC    Doc 25    Filed 09/29/05    Entered 09/29/05 10:21:02    Desc Main
Document    Page 4 of 8

Stipulation and Consent filed February 18, 2005 in Adversary Proceeding No. 05-00005. Nettles Hart also stipulated in that it seeks remand of this proceeding to state court, "solely for the purpose of pursuing [Nettles Hart's] claims against the non-debtor Defendant, Thomas R. Elliott, Jr." Id. (parenthetical added).[2]

### III. Conclusions of Law

#### A. Res Judicata and Collateral Estoppel

The arbitration award entered in the state court action is conclusive between these parties. Code of Ala., 1975, § 6-6-14. It is in the nature of a judgment, which by application of the principles of res judicata, bars relitigation of the claims submitted to arbitration in this or any other proceeding. Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala. 2001), cert. denied, 534 U.S. 893 (2001). See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985)(federal courts must give preclusive effect to judgments rendered by state courts and utilize state law to determine the preclusive effect of said judgments); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

In addition, collateral estoppel precludes the parties to the state court proceeding from relitigating, in this or any other proceeding, the issues embraced in and concluded by the arbitration award. Old Republic Ins. Co. v. Lanier, 790 So.2d at 928; Rhodes v. Folmar, 208 Ala. 595, 94 So. 745, 748 (1922).

#### B. Property of the Estate

The only assets involved in the state court case are the fees being held by the debtor, or more appropriately identified, the fund of money holding those fees. And because the state court arbitrator specifically ruled that those fees, and that fund, belong to Nettles Hart, those fees, and that fund, could not have been part of the bankruptcy estate created when the debtor filed its pending bankruptcy petition. Moreover, the only purpose of the state court lawsuit, and now the present adversary proceeding, is to secure the fees for Nettles Hart, fees Nettles Hart earned and which the debtor collected.

Consequently, since those fees are not property of the bankruptcy estate, the continuation of that lawsuit will neither detract from nor add to the bankruptcy estate. It will not reduce or increase what creditors will receive from the bankruptcy case. And, it

---

[2] When the state court litigation was removed, the state court record was removed to this Court. That record makes up the bulk of this Court's record in the instant proceeding. The Court has considered that record carefully along with the pleadings filed in this Court.

5

will not effect the trustee's ability to administer the estate for the benefit of those creditors.[3] In short, the continuation of the present lawsuit will have no conceivable effect on either the bankruptcy estate, or property of the bankruptcy estate, or the administration of the bankruptcy estate, or the Chapter 7 trustee, particularly since Nettles Hart stipulated, that if the case is remanded it will only pursue claims and remedies against Mr. Elliott, and not against the debtor.

### C. Jurisdiction, Remand, and Abstention

For the above reasons, the lawsuit is not "related" to the debtor's bankruptcy case as is required by 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) for the exercise of jurisdiction over it by this Court.[4] Writing for the Court of Appeals for the Eleventh Circuit in Gallucci v. Grant (In re Gallucci), 931 F.2d 738, 741 (11th Cir. 1991), Judge Gerald B. Tjoflat stated, "Although bankruptcy courts by statute may hear 'any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11,' 28 U.S.C. § 157(a)(1988), they may not entertain cases involving noncore, unrelated matters." Id. at 741. Judge Tjoflat added, "If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction." Id. at 742. And added, "if the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it." Id.

And the per curiam opinion from the same court in Community Bank of Homestead v. Boone (In re Boone), 52 F.3d 958, 960 (11th Cir. 1995), explained, "Title 28, section 1334(b) creates federal jurisdiction over 'civil proceedings arising under title 11 or arising in or related to a case under title 11.' Thus, for federal bankruptcy jurisdiction to exist, a case must at minimum 'relate to' a case under title 11." Id. at 960. That opinion added, "Hence, [t]o fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor." Id. at 961 (citation and internal quotation marks omitted). And added, "The lack of effect on the estate is thus fatal to bankruptcy jurisdiction over the claim." Id.

---

[3] Interestingly, despite his knowledge of this proceeding, the trustee has not asserted any claim to, and has not expressed any interest in, these fees. This Court must presume the reason is because the trustee agrees that the fees are not part of this bankruptcy estate.

[4] Section 1334(b) reads, "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 1334(d) reads, "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(d). Section 157(a) reads, "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

6

And finally writing for the same court in Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990), Judge Edward S. Smith, Senior Circuit Judge, sitting by designation, explained, "the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." Id. at 788 (citation and internal quotation marks omitted).

Consequently, because this Court does not have jurisdiction over the lawsuit involved in this adversary proceeding, the removal of that action to this Court was improvident and unauthorized. See 28 U.S.C. § 1452(a)("A party may remove any claim or cause of action ... if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.") (emphasis added). Therefore, the lawsuit must, for that reason, be remanded to the state court.

In addition, even if the removed lawsuit were "related" to the debtor's bankruptcy case, remand would be mandated by 28 U.S.C. § 1334(c)(2). That statute provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Id.

All of the criteria of section 1334(c)(2) have been met. Nettles Hart timely filed a motion for abstention after the lawsuit was removed. The lawsuit is based on a state law cause of action. It could not, absent bankruptcy, have been commenced in federal court. It has been commenced and was timely adjudicated in the state court. Furthermore, what remains of it can be timely adjudicated in state court, and was in fact in the process of being timely adjudicated in state court when it was removed.

Since this removed lawsuit meets all of the prerequisites for mandatory abstention pursuant to section 1334(c), the Court must abstain from hearing it and, in addition, remand it to the state court. See 28 U.S.C. § 1452(b)("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.").

### IV. Conclusion

Based on the above, the Court finds that the lawsuit removed by the debtor, specifically Civil Action CV 2003-006897, from the Circuit Court of Jefferson County, Alabama, must be remanded to that court. This Court lacks the jurisdiction to hear it

and, moreover, would be compelled by statute to abstain from hearing it even if it had jurisdiction.

## V. Order

It is therefore **ORDERED, ADJUDGED and DECREED** that:

1. The Emergency Motion for Remand and/or For Abstention is **GRANTED**;

2. This matter is **REMANDED** to the state court; and

3. This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347.

DONE this the 29th day of September 2005.

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm
    Mr. Lee Benton, attorney
    Mr. Scott Williams, attorney
    Mr. Dennis Schilling, attorney
    Mr. James Henderson, trustee
    Bankruptcy Administrator
    Mr. Robert Rubin, attorney
    Mr. Derek Meek, attorney
    Mr. Mark White, attorney
    State Court Clerk for Case No. CV 2003-006897